IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WALTER FIELDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.   14-cv-318-MJR-SCW |
| | ) |
| JACQUELINE LASHBROOK, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Pursuant to 42 U.S.C. § 1983, *pro se* Plaintiff Walter Fields filed a complaint against several prison officials for retaliation and improper conditions of confinement. The Court dismissed some of Plaintiff's claims early in the case because Plaintiff failed to exhaust his administrative remedies. The only claim left after that dismissal was Plaintiff's claim against Defendant Lashbrook; Plaintiff says that Lashbrook retaliated against him when he refused to answer questions during a prison murder investigation.

This matter is before the Court on Defendant Lashbrook's motion for summary judgment on the merits (Docs. 100 and 101). Plaintiff has filed an opposition (Doc. 105). The motion will be granted and judgment will issue in Lashbrook's favor.

### BACKGROUND

Plaintiff's complaint, as narrowed by the Court's threshold order, alleges that Defendant Lashbrook wrote Plaintiff a false disciplinary ticket in retaliation for Plaintiff refusing to answer questions during a murder investigation (Doc. 6). The investigation stems from the murder of Jason Hall, which occurred on January 30, 2013 (Doc. 1, p. 7).

Hall was in the cell next to Plaintiff's cell at the time of his murder by his cellmate (*Id.*; Doc. 104, p. 6). Also on January 30, 2013, Plaintiff states that he wrote a letter to Lashbrook indicating that he heard Hall request protective custody and heard officers Kempfer and Davis tell other inmates that Hall was a snitch (Doc. 1 at p. 7-8). Plaintiff was questioned about the murder by Defendant Lashbrook and Plaintiff refused to answer any of Lashbrook's questions (Doc. 6, p. 3; Doc. 104, p. 6). In his complaint, Plaintiff indicated that when Lashbrook came to his cell and attempted to ask questions about the murder, that Plaintiff was asleep (Doc. 1, p. 7-8). His grievance from February 10, 2013 indicates that he was unaware of the investigation by Lashbrook due to him being asleep when Lashbrook came by his cell (Doc. 104, p. 3). However, Inmate Holden testified, in an affidavit submitted by Plaintiff in his responsive brief, that he was Plaintiff's roommate and that they were both removed from their cell on January 31, 2013 and taken to Lashbrook for questioning about the murder. When asked about the murder, Plaintiff stated that he was asleep and did not hear anything (Doc. 104, p. 15).

Lashbrook subsequently issued Plaintiff a disciplinary ticket for Offense 110, Interfering or Impeding an Investigation, due to his failure to participate in the investigation (Doc. 104, p. 10). Plaintiff was found guilty of the offense on February 5, 2013, and received 1 month C-Grade, 1 month in segregation, and 1 month commissary restriction (Doc. 104, p. 11). Plaintiff appealed his disciplinary ticket, and the Administrative Review Board expunged the report on January 4, 2014 (*Id.* at p. 12).

## LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Marketing & Trade v. Multiut Corp.*, **648 F.3d 506, 517 (7th Cir. 2011)** (*citing* FED. R. CIV. P. 56(a)). A fact is material if it is outcome determinative under applicable law, and a genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986).**

The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits, and the other information submitted—the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).** After a proper motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, **477 U.S. at 250** (*quoting* FED. R. CIV. P. 56(e)(2)). A mere scintilla of evidence in support of the nonmovant's petition is insufficient; a party will be successful in opposing the motion when it presents definite, competent evidence to rebut it. *Szymanski v. Rite-Way Lawn Maintenance Co., Inc.*, **231 F.3d 360, 364 (7th Cir. 2000).**

On summary judgment, the Court considers the facts in the light most favorable to the non-movant, and adopts reasonable inferences and resolves doubts in the non-movant's favor. *Srail v. Vill. of Lisle*, **588 F.3d 940, 948 (7th Cir. 2009).** Even if the

material facts are not in dispute, summary judgment is inappropriate when the information before the Court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004), *abrogated on other grounds by Spiegla II*, 481 F.3d at 966 (7th Cir. 2007).

### B. Retaliation Standard

An official who retaliates against a prisoner for engaging in protected First Amendment activity violates the prisoner's First Amendment rights. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). Establishing a claim of retaliation requires a prisoner to show the following: (1) that he engaged in a protected activity, (2) he suffered a deprivation likely to prevent future protected activities, and (3) there was a causal connection between the two. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). A defendant can still prevail, however, if he shows that the offending action would have happened even if there had been no retaliatory motive, i.e. "the harm would have occurred anyway." *Mays v. Springborn*, 719 F.3d 631, 634-35 (7th Cir. 2013).

### C. Qualified Immunity

Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). It protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably

misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, **543 U.S. 194, 198 (2004).** It applies only to state officials who occupy positions with discretionary or policymaking authority and who are acting in their official capacities. *Harlow*, **457 U.S. at 816;** *Denius*, **209 F.3d at 950.**

The qualified immunity test has two prongs: (1) whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *Pearson,* **555 U.S. at 232;** *Brosseau,* **543 U.S. at 197.** While it is often beneficial to first inquire into whether the plaintiff has shown a constitutional violation, the Court has discretion to address the second prong first in light of the circumstances of the case. *Pearson*, **555 U.S. at 236.**

## ANALYSIS

Lashbrook's motion argues that she is entitled to summary judgment on two bases—that the retaliation claim is legally insufficient because Plaintiff's report was expunged and that Plaintiff's refusal to answer questions was not protected activity.

### A. Disciplinary Ticket Expunged

Lashbrook first argues that Plaintiff's retaliation claim is insufficient because his ticket was expunged. Plaintiff was issued a disciplinary report for impeding and interfering with an investigation. He was found guilty of that offense and was disciplined with 1 month C grade, 1 month segregation, and 1 month commissary restrictions (Doc. 104, p. 17). Plaintiff appealed the discipline to the Administrative

Review Board, where it was expunged on January 4, 2014 (Doc. 104, p. 12).

Defendant Lashbrook argues that because the Administrative Review Board ultimately expunged the disciplinary report, that Plaintiff cannot now pursue a retaliation claim against Lashbrook for the disciplinary ticket. In support of her position, Lashbrook relies on the Seventh Circuit opinion in *Bridges v. Gilbert*, **557 F.3d 541 (7th Cir. 2009).** In that case, the Seventh Circuit held that "[a] single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action." *Bridges*, **557 F.3d at 555.** However, in *Bridges*, the inmate plaintiff was issued an unjustified disciplinary charge in retaliation for his actions and the charge was quickly dismissed, seemingly without any real punishment imposed. *Id*. **at 555.**

However, in this case, Plaintiff was charged and sentenced on the alleged retaliatory disciplinary report. Plaintiff was given 1 month C grade, 1 month segregation, and 1 month commissary restriction for the ticket (Doc. 104, p. 17). While the disciplinary report was later expunged by the Board, that did not occur until almost eleven months after the disciplinary report was entered. Presumably by that time, Plaintiff had already served the disciplinary action that was instituted against him, including his time in segregation and commissary restrictions. Thus, unlike in *Bridges*, Plaintiff actually suffered a deprivation that would be likely to deter him from exercising his First Amendment rights in the future, as he received the punishment for the report. The report was not dismissed prior to Plaintiff being disciplined as was the case in *Bridges*. Accordingly, the Court finds that the holding in *Bridges* is distinguishable

from the case before the Court and Plaintiff's retaliation claim is legally sufficient.

### B. First Amendment Activity/Qualified Immunity

Defendant Lashbrook also argues that she is entitled to summary judgment because Plaintiff did not engage in protected First Amendment activity. Lashbrook argues that Plaintiff's refusal to answer Lashbrook's questions during the murder investigation does not constitute First Amendment activity.[1] Lashbrook points to one ruling from the District of Hawaii in support of her position. In that case, the magistrate judge entered a report and recommendation dismissing an inmate's claim for retaliation as the court concluded that refusing to provide information about fellow inmates was not protected activity. *See Canosa v. State of Hawaii*, **No. 05-00791 HG-LEK, 2007 WL 128849, at \*10 (D. Haw. Jan. 11, 2007) (recommendation adopted** *Canosa v. State of Haw.*, **No. 05-00791, 2007 WL 473679 (D. Haw. Feb. 8, 2007))**. The opinion of a judge in the District of Hawaii is not binding on this Court.

However, the Court finds no case law that indicates that discipline for remaining silent during a security investigation at a prison rises to a First Amendment violation.

---

[1] The Court notes that there is some confusion about whether Plaintiff is alleging that he purposefully remained silent or that he simply failed to participate in the investigation altogether. Plaintiff indicated in his complaint and grievance that he was not questioned at all by Lashbrook, but rather was asleep when Lashbrook allegedly sought to question him in his cell (Doc. 104, p. 13-14). But there is some dispute in the record whether Plaintiff was asleep when Lashbrook questioned him or whether he told Lashbrook he was asleep during the murder, as his cellmate testified to in his submitted affidavit (Doc. 104, p. 15). In any event, whether Defendant believed he was refusing to answer her questions even though he was asleep or whether Plaintiff actively refused to answer questions, the Court understands his complaint to allege that he was disciplined for not answering questions about the prison murder.

While the Court acknowledged that silence is generally protected under the First Amendment in its early threshold review, that right was firmly established in the public sector, and not in the prison setting. In the prison setting, prison regulations that impinge on an inmate's First Amendment rights are valid "if they are reasonably related to legitimate penological interests." *Singer v. Raemisch*, 593 F.3d 529, 534 (7th Cir. 2010). And investigating a murder in a prison goes to criminal deterrence and safety of the prison, both of which are legitimate interests. *See Van den Bosch v. Raemisch*, 658 F.3d 778, 785 (7th Cir. 2011) (valid penological interests include "crime deterrence, prisoner rehabilitation, and protecting the safety of prison guards and inmates").

Further, Plaintiff has not asserted any Fifth Amendment right against self-incrimination in refusing to answer Lashbrook's questions. Rather, Plaintiff alleges that he has a First Amendment right not to participate in a prison investigation. The Court finds no case law suggesting such a right exists in the prison setting and the Court finds that there are security and criminal deterrence interests in requiring participation in security investigations, particularly when, as in this case, a murder of a fellow inmate is at issue. Thus, the Court finds that the right to remain silent during a prison investigation, where an inmate's Fifth Amendment right to silence is not at issue, was not clearly established at the time of this incident. As such, the Court finds that Lashbrook is entitled to qualified immunity on Plaintiff's claim that she wrote a disciplinary ticket for Plaintiff's failure to participate in the murder investigation.

**CONCLUSION**

Defendant Lashbrook's motion for summary judgment (Doc. 100) is **GRANTED**.

The Clerk is **DIRECTED** to enter judgment in Lashbrook's favor and then close this case.

**IT IS SO ORDERED.**

DATED:   **June 3, 2016**

/s/ **Michael J. Reagan**
**Chief Judge Michael J. Reagan**
**United States District Court**